UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| ONIIWA WILSON,          ) | |
|     Plaintiff,          ) | |
| ) | |
| v.          ) | Case No. 25-1477 |
| ) | |
| MINDI NURSE, *et al.*,   ) | |
|     Defendants.      ) | |

## MERIT REVIEW ORDER

Plaintiff, proceeding *pro se* and currently incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights while he was incarcerated at Pontiac Correctional Center ("Pontiac"). (Doc. 1). The Court must "screen" Plaintiff's Complaint, and through such process, identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *See Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient, however. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

## ALLEGATIONS

Plaintiff files suit against Pontiac Warden Mindi Nurse, Dr. Rodney Alford, Healthcare Administrator Ginger Davis, Director of Nursing Nikki Rambo, and Nurses Bekah Doe, Henrretta Doe, and Sabrina Doe.

Plaintiff alleges he suffers from hypertension and asthma. Plaintiff alleges he saw Dr. Neha Agnihotri, an asthma and allergy specialist, in September 2023. During the appointment, Dr. Agnihotri voiced concerns that Plaintiff could have a heart attack or stroke due to his uncontrolled blood pressure. Plaintiff alleges he had not been sent to see the cardiologist, Dr. Adhir Shroff, for his scheduled appointments. Officer Chicke, who transported Plaintiff to the appointment with Dr. Agnihotri, allegedly called Defendant Rambo, the Director of Nursing, regarding Plaintiff's blood pressure and his need to see a cardiologist, as Defendant Rambo handled scheduling outside appointments. Despite knowledge of his serious medical need, Defendant Rambo allegedly failed to provide Plaintiff with urgently needed medical treatment.

On October 15, 2023, Plaintiff wrote to Counselor Brianne Ryan and asked her to check with Defendant Rambo about his need to see a cardiologist because he was having bad chest pains. On October 17, 2023, Counselor Ryan informed Plaintiff he had an upcoming appointment with a cardiologist.

On December 6, 2023, Plaintiff alleges Defendants Healthcare Administrator Davis and Dr. Alford walked through the north cellhouse for an audit tour or a monthly gallery tour. Plaintiff alleges he informed Defendants Davis and Alford that he needed to be sent to UIC to see a cardiologist because he was having bad chest pains. Plaintiff alleges Defendant Alford responded he would look into the matter. Plaintiff alleges Defendants Alford and Davis did not arrange for him to be transported to the hospital emergency room to address his chest pain.

On December 6, 2023, Nurse Jessica informed Plaintiff Defendant Alford said he had an upcoming appointment with a cardiologist at UIC. When Plaintiff told Nurse Jessica his chest hurt, Nurse Jessica allegedly contacted Defendant Alford to ask if he wanted her to give Plaintiff

anything for the chest pains. Defendant Alford did not order any new medication but said he would see Plaintiff on his doctor's call line.

On December 12, 2023, Plaintiff told Officer Chicke his chest hurt and asked about his appointment with a cardiologist. Plaintiff alleges Officer Chicke contacted the Healthcare Unit and informed them Plaintiff had chest pains. Officer Chicke asked to speak with Defendant Rambo, who informed Officer Chicke Plaintiff had an upcoming appointment at UIC.

On December 18, 2023, a nurse gave Plaintiff his medication and took his blood pressure, which was high. The nurse told Plaintiff she would let the doctor know.

On December 19, 2023, Plaintiff told Sergeant Dyer he was having chest pains. Sergeant Dyer called a medical tech to check Plaintiff's blood pressure, which was high. The medical tech said she put Plaintiff in to see Defendant Alford.

On December 20, 2023, Plaintiff had heart attack. Sergeant Dyer called a code #3 for help from security and medical staff. After determining he was not breathing and had no pulse, Officers Durry and Spencer performed CPR. Defendants Nurses Henrretta and Bekah arrived on scene but did not bring the defibrillator or assist with CPR. Plaintiff alleges Sergeant Dyer asked for the defibrillator, and Defendant Nurse Sabrina responded, "why he's dead." (Doc. 1 at p. 10). Sergeant Dyer demanded the defibrillator, and security staff continued performing CPR. Defendant Sabrina then arrived with the defibrillator and assisted with CPR for approximately a minute. Sergeant Dyer asked the nurses to use the defibrillator on Plaintiff, but they did not know how to hook it up. Sergeant Dyer then used the defibrillator, and Plaintiff began breathing again.

Plaintiff was taken by ambulance to Saint James Hospital in Pontiac, Illinois and then transferred to Saint Joseph Medical Center in Bloomington, Illinois for emergency surgery. On December 22, 2023, Dr. Agarwal, a cardiologist, performed surgery on Plaintiff and inserted

3

multiple stents. Dr. Agarwal prescribed a new medication and ordered Plaintiff to undergo cardiac rehabilitation three times a week for four weeks at Saint James Hospital. Plaintiff alleges he was taken to Saint James Hospital for cardiac rehabilitation only once on January 8, 2024.

On February 16, 2024, Plaintiff informed Officer Chicke he was experiencing chest pains and shortness of breath and feeling weak and faint after taking his medications. Officer Chicke called the Healthcare Unit and was informed Plaintiff had no appointments scheduled with a cardiologist or for cardiac rehabilitation.

During a follow up appointment with Defendant Alford on February 19, 2024, Defendant listened to Plaintiff's heart and informed him he had an abnormal heart rhythm or an irregular heartbeat. Defendant Alford ordered an EKG test. Plaintiff alleges he told Defendant Alford that he was not being sent out for his cardiac rehabilitation appointments. Defendant Alford allegedly responded that the prison was short-staffed, and his appointments would be rescheduled. Plaintiff alleges he also informed Defendant Alford he was having chest pains and requested a stress test. Defendant Alford responded to wait until his next follow up appointment with the cardiologist.

On April 3, 2024, Plaintiff informed Officer Chicke his chest hurt and he had not been sent out for further cardiac rehabilitation. Plaintiff alleges Officer Chicke informed the warden about Plaintiff's need for medical treatment.

On April 8, 2024, Plaintiff alleges he filed an emergency grievance and sent it to Defendant Warden Nurse. Plaintiff complained he had not received the recommended cardiac rehabilitation after his surgery and was not receiving treatment to address his ongoing chest pains.

On June 9, 2024, Plaintiff learned Defendant Nurse was having him transferred to Pinckneyville, despite knowing he had uncontrolled high blood pressure, needed cardiac rehabilitation, and had scheduled appointments at UIC with Dr. Agnihotri and cardiologist Dr.

4

Adhir Shroff. Plaintiff alleges he wrote a letter to Defendant Nurse about his scheduled appointments and heart problems to attempt to stop his transfer. Despite being on a medical hold at Pontiac, Plaintiff was transferred to Pinckneyville on June 12, 2024. Plaintiff alleges he did not receive medical care at Pinckneyville until November 25, 2024.

Plaintiff describes in detail the medical treatment he received between November 25, 2024 and September 26, 2025, when he underwent surgery to remove a blockage clogging one of the stents.

## ANALYSIS

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id*. An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Plaintiff alleges Defendant Rambo, the Director of Nursing, knew about his uncontrolled high blood pressure, chest pains, and his need to see a cardiologist. Plaintiff alleges Defendant Rambo allegedly failed to take reasonable steps to provide urgently needed medical treatment. As a result, Plaintiff's condition worsened, and he suffered a heart attack on December 20, 2023. Plaintiff alleges Defendant Dr. Alford delayed medical treatment to address his uncontrolled high blood pressure, failed to send him to the hospital when he reported chest pain, failed to provide medical care when Plaintiff reported he continued to experience chest pain and weakness after his surgery, and failed to ensure Plaintiff received the recommended cardiac rehabilitation after his surgery. The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendants Rambo and Alford.

Regarding Defendant Healthcare Administrator Davis, Plaintiff alleges he personally informed her that he was having chest pain while she toured the cellhouse on December 6, 2023, but she did not arrange for him to be transported to the hospital. Plaintiff does not allege any further involvement in his medical care. Plaintiff's threadbare allegations against Defendant Davis are insufficient to proceed on an Eighth Amendment deliberate indifference claim. There is no *respondeat superior* under § 1983. In other words, Defendant Davis cannot be liable based only on her supervisory role. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir. 2019). Defendant Davis is dismissed without prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A.

When Plaintiff suffered a heart attack on December 20, 2023, Defendants Nurses Henrretta and Bekah allegedly did not assist with CPR, and Nurse Sabrina assisted for only a short time. Plaintiff also alleges Defendant Sabrina did not bring the defibrillator until Sergeant Dyer demanded it. Defendants Henrretta, Bekah, and Sabrina also claimed they did not know how to

hook up the defibrillator. During this time, Plaintiff alleges correctional officers performed CPR, and Sergeant Dyer used the defibrillator. While Defendants Henrretta, Bekah, and Sabrina's conduct may have been negligent, negligence is not a federal claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018). Defendants Henrretta, Bekah, and Sabrina are dismissed without prejudice for failure to state a claim under Rule 12(b)(6) and § 1915A.

Plaintiff alleges he sent an emergency grievance to Defendant Nurse about his chest pain and need for cardiac rehabilitation on April 8, 2024, but did not receive a response. When Plaintiff learned he would be transferred to Pinckneyville, he wrote a letter to Defendant Nurse to inform her about his ongoing medical issues and upcoming appointments. Nevertheless, Defendant Nurse transferred Plaintiff to Pinckneyville on June 12, 2024, where his medical care was delayed for months. Plaintiff claims Defendant Nurse transferred him to Pinckneyville because she was upset that he was filing grievances about his delayed appointments. The Court finds Plaintiff's allegations are sufficient to proceed on an Eighth Amendment claim against Defendant Nurse for allegedly failing to ensure Plaintiff received medical care for his serious medical condition and for transferring him to Pinckneyville despite being on a medical hold.

Plaintiff also states a First Amendment retaliation claim against Defendant Nurse for allegedly transferring him to Pinckneyville for filing grievances about his delayed medical appointments. To establish First Amendment retaliation, Plaintiff must successfully allege that (1) his speech was constitutionally protected; (2) he suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating factor in the Defendant's action. *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020). Inmates have a First Amendment right to file grievances. *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Plaintiff alleges he was transferred

7

to Pinckneyville where his medical care was delayed for months. At the pleading stage, it can be inferred that this transfer would likely deter future First Amendment activity. *See id.*

**IT IS THEREFORE ORDERED:**

1) Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that Plaintiff states an Eighth Amendment claim against Defendants Nikki Rambo, Dr. Rodney Alford, and Mindi Nurse based on their alleged deliberate indifference to his serious medical needs and a First Amendment retaliation claim against Defendant Mindi Nurse for allegedly transferring him to Pinckneyville because he filed grievances. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

2) Defendants Ginger Davis, Bekah Doe, Henrretta Doe, and Sabrina Doe are DISMISSED WITHOUT PREJUDICE for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE these Defendants.

3) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

4) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

6) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

7) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin

until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

9) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

10) Plaintiff shall be provided a copy of all pertinent medical records upon request.

11) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

12) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

ENTERED: March 2, 2026

s/ Michael M. Mihm<br>
Michael M. Mihm<br>
United States District Judge